UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| Artur Botelho, | ) |
| | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| Reinhart Foodservice LLC | ) |
| & Performance Food Group, Inc. | ) |
| | ) |
| Defendants | ) |

**DEMAND FOR JURY TRIAL**

_____)

## COMPLAINT AND JURY DEMAND

### Parties

1.     Plaintiff Artur Botelho ("Mr. Botelho" or "Plaintiff") is a male resident of the Commonwealth of Massachusetts, residing at 58 Salisbury Street, New Bedford, MA 02744.

2.     Defendant Reinhart Foodservice LLC ("Reinhart") is a for-profit corporation that, upon information and belief, is incorporated in the State of Virginia and its principal office is located at 12500 West Creek Parkway, Richmond, VA 23238.  During all relevant times, the Company retained premises in, and conducted business in, the Commonwealth of Massachusetts, including by operating a facility at 225 John Hancock Road, Taunton, MA 02780.

3.     Defendant Performance Food Group, Inc. ("PFG")(Reinhart and PFG, individually and collectively, the "Company" or "Defendants") is a for-profit corporation that, upon information and belief, is incorporated in the State of Virginia and its principal office is located at 12500 West Creek Parkway, Richmond, VA 23238.  During all relevant times, the Company retained premises in, and conducted business in, the Commonwealth of Massachusetts, including by operating a facility at 225 John Hancock Road, Taunton, MA 02780.

**Jurisdiction and Venue**

4.      The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.

§1331 because Plaintiff has brought claims pursuant to the Age Discrimination in Employment

Act of 1967 (ADEA), 29 U.S.C. §621 *et seq,* Family and Medical Leave Act, 29 U.S.C. § 2615*,*

and Americans with Disabilities Act (ADA), 42 U.S.C. §§12101, *et seq.*. The court may exercise

supplemental jurisdiction over the Plaintiff's state law claims. 28 U.S.C. §1367.

5.      Venue is appropriate in the District of Massachusetts as the acts or omissions

giving rise to the claims in this Complaint occurred in the District of Massachusetts.

6.      This court has personal jurisdiction over Reinhart because Reinhart engaged in

and transacted business in the Commonwealth of Massachusetts, including by owning, managing

and/or operating facilities in Massachusetts, and by employing the Plaintiff in Massachusetts,

and the Plaintiff's causes of action stem largely from business transactions and employment

actions by Reinhart within the Commonwealth of Massachusetts.  Reinhart is registered with the

Massachusetts Secretary of State as a foreign corporation operating in the Commonwealth of

Massachusetts. Indeed, the Plaintiff was employed by Reinhart in the Commonwealth of

Massachusetts at a facility located in Taunton, MA, was managed by Reinhart in the

Commonwealth of Massachusetts, and was terminated by Reinhart in the Commonwealth of

Massachusetts.

7.      This court has personal jurisdiction over PFG because PFG engaged in and

transacted business in the Commonwealth of Massachusetts, including by owning, managing

and/or operating facilities in Massachusetts, and by employing the Plaintiff in Massachusetts,

and the Plaintiff's causes of action stem largely from business transactions and employment

actions by PFG within the Commonwealth of Massachusetts.  PFG is registered with the

Massachusetts Secretary of State as a foreign corporation operating in the Commonwealth of

Massachusetts. Indeed, the Plaintiff was employed by PFG in the Commonwealth of Massachusetts at a facility located in Taunton, MA, was managed by PFG in the Commonwealth of Massachusetts, and was terminated by PFG in the Commonwealth of Massachusetts.

## Statement of Facts

8.      Mr. Botelho was born in 1959, and he is currently 62 years old.

9.      In or around December 1984, Mr. Botelho was hired as a trucker's helper in Taunton, MA, by the now-defunct Natco Foods, Inc. ("Natco").

10.     During his employment, Natco was bought out in or around 2011 by Reinhart and its existing assets and operations were then managed by Reinhart, who then became Mr. Botelho's employer.

11.     At all relevant times, Reinhart was owned and operated by PFG.

12.     During his employment, Reinhart and PFG were so interrelated that they should be considered a joint employer of the Plaintiff.

13.     Indeed, Reinhart was managed by PFG and Mr. Botelho's employment was subject to the terms and policies in PFG employee handbooks.

14.     Reinhart and PFG each maintained control over Mr. Botelho's pay, human resources functions, and employment status.

15.     Upon information and belief, both PFG and Reinhart share a common Massachusetts address of 225 John Hancock Road, Taunton, MA 02780.

16.     Upon information and belief, PFG and Reinhart share one or more principals or board members in common.

17.     Upon information and belief, Reinhart and PFG shared common human resources and labor relations functions, personnel, policies, and practices.

18.     Reinhart and PFG both exercised control over the Plaintiff's employment, including his hiring, termination, assignments, and pay.

19.     Accordingly, Reinhart and PFG were both joint employers of Mr. Botelho.

20.     At all relevant times, the Company (including both Reinhart and PFG each individually) employed 20 or more employees for 20 or more calendar weeks during the preceding 12 months, making the Company (including both Reinhart and PFG collectively, and each individually) a covered employer under the Age Discrimination in Employment Act ("ADEA"), ADA and relevant state law.

21.     At all relevant times, the Company (including both Reinhart and PFG collectively, and each individually) employed 50 or more employees during 20 or more calendar weeks during the relevant years. Accordingly, the Company (including both Reinhart and PFG collectively, and each individually) was a covered employer under the Family and Medical Leave Act ("FMLA").

22.     During his employment, Reinhart and PFG were so interrelated that they should be considered a single integrated employer of the Plaintiff (including under applicable FMLA tests).

23.     Upon information and belief, Reinhart and PFG shared an interrelation between business operations. Indeed, PFG exercised influence over the hiring and firing decisions related to employees' (including Mr. Botelho's) employment, had a role in daily assignments, and maintained human resources functions over employees' (including Mr. Botelho's) employment.

24.     Upon information and belief, Reinhart and PFG shared common executive and board members.

25.     Upon information and belief, PFG exercised centralized labor functions, including human resources functions, for Reinhart.

26.     During the relevant portion of his employment, Mr. Botelho reported to the Inventory Control Manager, Sean Turgeon ("Turgeon").

27.     In or around June 2019, Mr. Botelho was experiencing severe flareups from chronic pain which his chiropractor had informed him was sciatic nerve damage.

28.     Mr. Botelho's chronic sciatic nerve pain is an impairment that substantially limits one or more of his major life activities, including, but not limited to, sleeping, lifting, bending, and otherwise engaging in strenuous physical activity. Similarly, his sciatic nerve pain is an impairment that substantially limits one or more bodily systems, including his muscular and nervous systems. Accordingly, Mr. Botelho was disabled under federal law and handicapped under state law.

29.     Because of his debilitating nerve pain, Mr. Botelho disclosed this disability to Turgeon.

30.     Indeed, on multiple occasions, Turgeon and Mr. Botelho discussed the extent of Mr. Botelho's back pain, sciatic pain, and the chiropractic treatment Mr. Botelho was receiving for his disability pain.

31.     Mr. Botelho requested the reasonable disability-related accommodation of intermittent leave in order to take occasional days or half-shifts off during egregious flareups of his disability.

32.     Turgeon granted this accommodation request.

33.     In or around April 2020, Mr. Botelho's wife (who had previously been diagnosed with, and suffered from, colon cancer) was suffering from increasingly exacerbated symptoms of her cancer.

34.     Mr. Botelho then further learned that his wife would have to undergo a series of treatments, including surgeries, chemotherapy, and recovery related to her cancer disability.

35.     As a result of undergoing these treatments, Mr. Botelho's wife often needed his assistance and care to attend the treatments and/or to recover from the treatments.

36.     As such, Mr. Botelho informed Turgeon of his wife's colon cancer and requested the ability to take leave, protected under the FMLA, in order to care for his ailing wife.

37.     At this time and, indeed, at all relevant times after December 1985, Mr. Botelho had worked for the Company for more than 12 months and at least 1,250 hours during the previous 12-month period.

38.     At all relevant times (including the time of his leave), the Company (including both Reinhart and PFG, individually and collectively) also employed 50 or more employees within a 75-mile radius of his workplace. Mr. Botelho was therefore an eligible employee under the FMLA.

39.     Mr. Botelho's wife's colon cancer is a serious medical condition which qualifies for care under the FMLA.

40.     Turgeon approved Mr. Botelho's request for FMLA leave to take care of his wife.

41.     Accordingly, Mr. Botelho commenced his protected FMLA leave in or around May 2020.

42.     During his FMLA leave to take care of his wife, Turgeon was replaced in his position by Tyler Lopes ("Lopes").

43.     Lopes is more than 30 years younger than Mr. Botelho.

44.     As Lopes was now Mr. Botelho's supervisor and interacted with him closely, Lopes was aware of Mr. Botelho's age. Indeed, further, Mr. Botelho's age was apparent given his fatigued facial features, graying hair, and general mannerisms of how he physically walked around.

45.     On or around August 5, 2020, Mr. Botelho returned from FMLA leave and learned that Lopes was now his supervisor.

46.     Since Lopes was now his supervisor, Mr. Botelho then disclosed his disability of sciatic nerve pain to Lopes as well.

47.     Indeed, Lopes and Mr. Botelho discussed his sciatic pain in his back on occasion while passing each other in the workplace.

48.     Lopes was hostile to Mr. Botelho, seemingly due to his age, his disability, and/or in retaliation for taking FMLA leave, even though Lopes knew that Mr. Botelho's wife was suffering from colon cancer.

49.     For instance, Lopes commented that Mr. Botelho might not have the "energy" for this job, which constituted a clear discriminatory reference to the fact that Mr. Botelho was much older than his similarly situated coworkers and suffered from a disability.

50.     Further, if Lopes was required to choose employees for tasks, he routinely preferred to choose younger and non-disabled employees rather than Mr. Botelho.

51.     When Mr. Botelho volunteered or was assigned tasks, Lopes looked annoyed at the prospect of an older and disabled employee performing such tasks.

52.     Indeed, Lopes immediately, within weeks of Mr. Botelho's return from FMLA, subjected Mr. Botelho to disciplinary action for allegedly not taking care of the loading docks during his FMLA leave.

53.     Importantly, Mr. Botelho was on leave during the timeframe of this alleged incident (and was thus unable to take care of the loading docks), making it clear this was a pretextual justification to reprimand Mr. Botelho.

54.     Additionally, care of the docks was not part of Mr. Botelho's job responsibilities, as the Company's maintenance crew was in charge of that task.

55.     Notably, the maintenance crew was primarily made up of employees substantially younger than Mr. Botelho, and these employees were both non-disabled, and, upon information and belief, had not recently used FMLA protected leave.

56.     Further, a younger employee, maintenance supervisor Joel Cancel ("Cancel"), was in charge of the maintenance crew.

57.     Cancel is more than 30 years younger than Mr. Botelho.

58.     In light of this clearly unjustified reprimand, Mr. Botelho raised protected concerns to Lopes that this disciplinary action was seemingly due to his age or in retaliation for taking protected leave.

59.     Lopes grew angry, including by raising his voice and gesturing aggressively, in response to Mr. Botelho's expression of protected concerns and he ordered Mr. Botelho to immediately get back to work, clearly refusing to discuss Mr. Botelho's protected concerns.

60.     Due to Lopes' attitude, it was clear he was further upset at Mr. Botelho having utilized protected leave and it likewise seemed clear that Lopes worried that Mr. Botelho

would likely request further protected leave in the future (including both to care for his wife and if his disclosed sciatic nerve pain disability were to flare up).

61.     Indeed, based on Lopes' earlier stereotype-based comment about Mr. Botelho not having sufficient "energy" for the job, it was further apparent that Lopes felt Mr. Botelho should have prioritized the Company over care for his terminally ill wife, insinuating Mr. Botelho would have more energy at work if he did not take leave.

62.     Indeed, Lopes again disciplined Mr. Botelho for the same illegitimate reason (care of the docks) one week later, despite the fact that care of the docks was Cancel's responsibility.  Notably, the younger, non-disabled Cancel was not disciplined for the state of the docks, even though it was his responsibility (and that of the team he managed) to care for them.

63.     Mr. Botelho raised protected concerns to Lopes that these two unjustified disciplines issued in rapid succession seemed to be due to his (Mr. Botelho's) age, disability, and/or in retaliation for taking FMLA leave.

64.     Fearing the discriminatory and retaliatory actions by Lopes would continue, in or around November 2020, Mr. Botelho raised protected concerns to Inventory Control and FSQA Manager Joshua Chace ("Chace"), including expressing the concern that Lopes was discriminating and/or retaliating against him by issuing him (Mr. Botelho) unjustified writeups due to his age, disability, and because he (Mr. Botelho) had engaged in protected activity, including by requesting and utilizing FMLA leave and by raising protected concerns.

65.     Chace is more than 10 years younger than Mr. Botelho.

66.     Although Chace said that he would look into the protected concerns raised by Mr. Botelho, he refused to remove the write-ups provided by Lopes that were patently

false and unjustified (and which appeared to be a clear attempt to paper the file in order

to have a pretextual excuse to take more serious adverse actions against Mr. Botelho).

67.     After Mr. Botelho raised these protected concerns, Lopes began to assign

Mr. Botelho even more work in a seemingly retaliatory manner.

68.     Indeed, other younger employees who were supervised by Lopes were allowed

to both postpone daily tasks and to sometimes leave early. In addition, they were frequently

only assigned to work 8-hour shifts.

69.     In contrast, Mr. Botelho was required to work 10 to 12-hour shifts, including to

cover the younger employees' responsibilities when they were allowed to leave early.

70.     Due to Lopes' retaliatory behavior, Mr. Botelho again raised protected concerns

to Chace that Lopes was discriminating and retaliating against him (Mr. Botelho) by assigning

him (Mr. Botelho) the work of younger employees due to his age, disability, and because he

(Mr. Botelho) had engaged in protected activity, including by requesting and utilizing FMLA

leave and by raising protected concerns.

71.     Chace again stated that he would look into Mr. Botelho's protected concerns but

was otherwise dismissive towards Mr. Botelho's concerns.

72.     Indeed, upon information and belief, nothing was ever done to address Mr.

Botelho's concerns.

73.     As such, Lopes was able to continue his discriminatory, harassing, and

retaliatory treatment towards Mr. Botelho.

74.     Mr. Botelho continued to raise protected concerns to Chace to no avail.

75.     On or around January 20, 2021, Mr. Botelho was called into the office of the general manager Gregory Cox ("Cox"), where Lopes and Human Resources representative Alison Grundy ("Grundy") were also present along with Cox.

76.     Cox informed Mr. Botelho that he (Mr. Botelho) was terminated from the Company.

77.     Notably, Cox did not at this time provide Mr. Botelho with a reason for his termination, and the Company did not accuse Mr. Botelho of having violated any disciplinary policies or of failing to meet performance metrics.

78.     Accordingly, Mr. Botelho was terminated on January 20, 2021.

79.     Subsequent to initiating legal proceedings, the Company has alleged Mr. Botelho's termination to be a result of allegedly violating Company policy regarding the proper testing or disposal of returned perishable items.

80.     Importantly, Mr. Botelho had not previously received any discipline related to alleged issues with the testing or disposal of returned perishable items.

81.     Notably, the Company employed a progressive disciplinary policy wherein employees first received a verbal warning, then written warning, then final warning, then suspension and/or termination for offenses.

82.     Importantly, the Company skipped one or more steps in its progressive disciplinary policy in terminating Mr. Botelho for this alleged infraction.

83.     Indeed, for issues similar to those which Mr. Botelho was accused of, the Company typically undertook all standard steps of discipline prior to termination and, even when they engaged in similar activity, the Company did not similarly terminate many of Mr. Botelho's

younger, non-disabled employees who did not engage in protected activity such as utilizing FMLA leave.

84.     For instance, the much younger, non-disabled Mr. Cancel merely received a written warning for the same or similar transgression and was not terminated.

85.     Further, the mid-40s, non-disabled Mark Freitas ("Mr. Freitas") received a written warning for the same or similar disciplinary and was not terminated.

86.     Upon information and belief, Mr. Botelho was replaced in his position by a younger, non-disabled individual.

87.     On or around September 30, 2021, the Plaintiff timely filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD"), which was cross-filed with the United States Equal Employment Opportunity Commission ("EEOC").

88.     On or around August 23, 2022, the Plaintiff filed an Amended Charge of Discrimination with the MCAD.

89.     On or around September 9, 2022, Mr. Botelho informed the MCAD and EEOC of his intent to withdraw his charge to pursue his claims in court.

90.     On or around September 14, 2022, the MCAD issued a dismissal letter to Mr. Botelho with the right to pursue his claims in court.

91.     On or around September 15, 2022, the EEOC issued Mr. Botelho a right to sue letter.

92.     This lawsuit is timely filed.


**COUNT I**

**(Retaliation for Exercising Rights Under the Family and Medical Leave Act – 29 U.S.C. § 2615)**

**Mr. Botelho v. Defendants (Reinhart and PFG)**

93.     Mr. Botelho incorporates all paragraphs above and below as if set forth fully herein.

94.     The Defendants are (and at all relevant times were) engaged in an industry affecting commerce.

95.     The Defendants are an integrated employer for the purposes of FMLA because at all relevant times they were so interrelated in business operations, shared common management, shared a centralized control of labor relations, and shared a degree of common financial control or ownership.

96.     The Defendants employed 50 or more employees during 20 or more calendar weeks in each current and/or preceding calendar year.

97.     Accordingly, the Defendants (both collectively and each individually) were a covered employer under the FMLA.

98.     Mr. Botelho was an eligible employee under the FMLA because at all relevant times he had worked for the Defendants for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

99.     In addition, the Defendants employed 50 or more employees within 75 miles of the worksite at which Mr. Botelho was based.

100.    Mr. Botelho suffered from one or more serious health conditions which required continuing treatment by a healthcare provider, including sciatic nerve pain.

101.    Mr. Botelho requested the use of intermittent leave to be utilized whenever he experienced a severe flareup or required medical assistance for his disability.

102.     Mr. Botelho further provided care for his spouse who suffered from a serious health condition which required continuing treatment, including for colon cancer.

103.     Mr. Botelho requested FMLA-eligible leave related to the need to take time off for his spouse's serious health conditions and to provide care, protected under the FMLA, for her serious health conditions (including recuperating from medical treatment).

104.     Mr. Botelho engaged in activity protected under the FMLA both by requesting and by utilizing FMLA-protected leave.

105.     The Defendants retaliated against Mr. Botelho for the exercise of his protected FMLA rights, and for engaging in other protected activity, by subjecting him to adverse employment actions, including, but not limited to, subjecting Mr. Botelho to a harassing and otherwise hostile work environment, by inappropriately and improperly disciplining Mr. Botelho, changing Mr. Botelho's workplace responsibilities and typical working hours, dismissing raised protected concerns, and/or terminating Mr. Botelho's employment.

106.     Indeed, within two months of returning from protected FMLA leave, Mr. Botelho was issued two alleged disciplinary warnings and suspension. Further, within five months of his return from FMLA leave, Mr. Botelho was terminated.

107.     The Defendants' actions, including their violations of the FMLA, were willful and undertaken in bad faith.

108.     As a direct and proximate result of the Defendants' violation of the FMLA, Mr. Botelho has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

109.   Mr. Botelho seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorney's fees, and costs.

## COUNT II

### (Age Discrimination in Violation of M.G.L. c 151B)

### Mr. Botelho v. Defendants (Reinhart & PFG)

110.   Mr. Botelho incorporates all paragraphs above and below as if set forth fully herein.

111.   Reinhart and PFG are an employer under the definition of M.G.L.c 151B because they employed six or more persons.

112.   Mr. Botelho was born in 1959 and, at all relevant times, was over 60 years old.

113.   The Defendants, including, but not limited to, through their agents, discriminated against the Plaintiff with respect to his compensation, terms, conditions, or privileges of employment, because of the Plaintiff's age and/or because Plaintiff was over 40 years old with a handicap ("age plus" discrimination).

114.   Further, the Defendants subjected the Plaintiff to adverse actions in a discriminatory manner because of his age and/or status as an older handicapped individual, including, but not limited to, a harassing and hostile work environment, reallocating work from younger employees, inappropriately and improperly disciplining Mr. Botelho, changing Mr.

Botelho's workplace responsibilities and typical working hours, dismissing raised protected concerns, and/or terminating Mr. Botelho's employment.

115.    For example, the Defendants would allow employees younger than Mr. Botelho to leave work earlier that scheduled, and the Defendants then required Mr. Botelho to work longer in order to perform the work the younger employees would have done if they had not been allowed to leave early.

116.    Upon information and belief, the Defendants replaced Mr. Botelho with a younger employee.

117.    The Defendants acted with knowledge, or reason to know, that their acts violated the state protected rights of Mr. Botelho under M.G.L.c. 151B.

118.    As a direct and proximate result of the Defendants' violations of M.G.L.c. 151B, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

119.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, emotional distress damages (including, but not limited to, for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), double and treble damages, attorneys' fees, and costs.

**COUNT III**
**(Age Discrimination in Violation of 29 U.S.C. §§ 621 et seq.)**
**Mr. Botelho v. Defendants (Reinhart & PFG)**

120.     Mr. Botelho incorporates all paragraphs above and below as if set forth fully herein.

121.     The Defendants (Reinhart and PFG both individually and collectively) are an employer under the definition of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA") because the Defendants are engaged in an industry affecting commerce and has twenty or more employees for each working day in each of twenty or more calendar weeks during the relevant years.

122.     Mr. Botelho was born in 1959 and, at all relevant times, was over 60 years old.

123.     The Company, including, but not limited to, through their agents, discriminated against the Plaintiff with respect to his compensation, terms, conditions, or privileges of employment, because of the Plaintiff's age and/or because Plaintiff was over 40 years old.

124.     Further, the Defendants subjected the Plaintiff to adverse actions in a discriminatory manner because of his age and/or status as an older handicapped individual, including, but not limited to, a harassing and hostile work environment, reallocating work from younger employees, inappropriately and improperly disciplining Mr. Botelho, changing Mr. Botelho's workplace responsibilities and typical working hours, dismissing raised protected concerns, and/or terminating Mr. Botelho's employment.

125.     For example, the Defendants would allow employees younger than Mr. Botelho to leave work earlier that scheduled, and the Defendants then required Mr. Botelho to work longer in order to perform the work the younger employees would have done if they had not been allowed to leave early.

126.     Upon information and belief, the Defendants replaced Mr. Botelho with a younger employee.

127.     The Company willfully violated the ADEA because the Company knew or should have known its conduct was prohibited by Federal law and/or the Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Botelho.

128.     As a direct and proximate result of the Company's violations of the ADEA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

129.     The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), reduced earning capacity, other financial damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

## COUNT IV

## (Handicap Discrimination in Violation of M.G.L. c 151B)

## Mr. Botelho v. Defendants (Reinhart & PFG)

130.     The Plaintiff incorporates all Paragraphs above and below as if set forth fully herein.

131.     Defendants (both Reinhart and PFG) are an employer under the definition of M.G.L.c 151B because they each employed six or more persons.

132.     Mr. Botelho suffered from one or more handicaps as defined by the MGL 151B (i) because he had one or more impairments (sciatica) which substantially limited one or more major life activities (bending, walking, lifting, and running) ; (ii) because Mr. Botelho had a

record of such impairment(s); and/or (iii) because the Defendants regarded Mr. Botelho as having one or more handicaps.

133.    At all relevant times, Mr. Botelho was a qualified employee and was capable of performing the essential functions of his job with or without reasonable accommodations.

134.    Mr. Botelho disclosed his handicap to the Defendants, and/or the Defendants were aware of Mr. Botelho's handicaps, and/or the Defendants regarded Mr. Botelho as handicapped.

135.    The Defendants, including, but not limited to, their agents, harassed and discriminated against the Plaintiff with respect to his compensation, terms, conditions, or privileges of employment, because of the Plaintiff's handicaps and/or because Plaintiff was regarded as handicapped.

136.    Indeed, the Defendants treated the Plaintiff with more hostility following his handicap disclosure.

137.    More specifically, the Defendants subjected the Plaintiff to adverse actions in a discriminatory manner because of his handicaps, including, but not limited to, a harassing and hostile work environment, reallocating work from younger non-handicapped employees, inappropriately and improperly disciplining Mr. Botelho, changing Mr. Botelho's workplace responsibilities and typical working hours, dismissing raised protected concerns, and/or terminating Mr. Botelho's employment.

138.    The Defendants acted with malice and/or with reckless indifference to the state-protected rights of Mr. Botelho.

139.    As a direct and proximate result of the Defendants' violations of M.G.L.c. 151B, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

140.     The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, emotional distress damages (including, but not limited to, for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, and costs.

## COUNT V

### (Disability Discrimination in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, *et seq.*)

### Mr. Botelho v. Defendants (Reinhart & PFG)

141.     Mr. Botelho incorporates all paragraphs above and below as if set forth fully herein.

142.     At all relevant times, the Company (both Reinhart & PFG individually) employed fifteen or more persons for 20 or more weeks in the preceding 12 months.

143.     The Company is an employer under the definition of the ADA.

144.     Mr. Botelho suffers (and at all relevant times suffered) from sciatic nerve pain.

145.     Mr. Botelho's sciatic nerve pain is an impairment that substantially limits one or more of his major life activities, including, but not limited to, sleeping, lifting, bending, and otherwise engaging in strenuous physical activity. Similarly, his sciatic nerve pain is an impairment that substantially affects one or more bodily systems, including his muscular system. Accordingly, Mr. Botelho was disabled under federal law.

146.    Mr. Botelho disclosed his disabilities to the Defendants, the Defendants knew about Mr. Botelho's disabilities, and/or the Defendants regarded Mr. Botelho as disabled.

147.    Mr. Botelho requested disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job.  These requested reasonable accommodations included, but were not limited to, one or more disability-related medical leaves.

148.    The disability-related accommodations requested by Mr. Botelho did not pose an undue burden on Defendants.

149.    Following his request for leave, the Defendants subjected the Plaintiff to adverse actions in a discriminatory manner because of his handicaps, including, but not limited to, a harassing and hostile work environment, reallocating work from younger non-disabled employees, inappropriately and improperly disciplining Mr. Botelho, changing Mr. Botelho's workplace responsibilities and typical working hours, dismissing raised protected concerns, and/or terminating Mr. Botelho's employment.

150.    Non-disabled employees of the Company were treated more favorably than Mr. Botelho, including through not being improperly harassed, not subjected to a hostile work environment, not being tasked with performing others' work, and/or not being terminated.

151.    Upon information and belief, the Company replaced Mr. Botelho with a lesser or similarly qualified, non-disabled employee.

152.    Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Mr. Botelho and/or conduct so reckless to amount to such disregard.

153.    Indeed, the Defendants treated the Plaintiff with more hostility following his disability disclosure.

154.    As a direct and proximate result of the Defendants' violations of the ADA, Mr. Botelho has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

155.    Mr. Botelho seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, emotional distress damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages, interest, attorneys' fees, and costs.

## COUNT VI

### (Retaliation in Violation of M.G.L.c. 151B)

### Plaintiff v. Defendants (Reinhart & PFG)

156.    The Plaintiff incorporates all Paragraphs above and below as if set forth fully herein.

157.    The Plaintiff engaged in protected activity under M.G.L.c. 151B, including, but not limited to, (i) requesting and/or utilizing one or more reasonable accommodations for his handicaps which were intended to allow Mr. Botelho to perform the essential functions of his job (including his request for intermittent leave whenever his sciatica flared up); (ii) opposing and raising protected concerns regarding harassing, discriminatory, and retaliatory conduct due to his age or handicap.

158.    The Defendants retaliated against Mr. Botelho for engaging in protected activity, including, but not limited to, by subjecting him to a harassing and hostile work environment,

reallocating work from younger non-handicapped employees, inappropriately and improperly disciplining Mr. Botelho, changing Mr. Botelho's workplace responsibilities and typical working hours, dismissing raised protected concerns, and/or terminating Mr. Botelho's employment.

159.    The Defendants acted with malice and/or with reckless indifference to the state protected rights of Mr. Botelho.

160.    As a direct and proximate result of the Defendants' violations of M.G.L.c. 151B, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

161.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, and costs.

## COUNT VII
### (Retaliation in Violation of 29 U.S.C. §§ 621 et seq.)
### Mr. Botelho v. Defendants (Reinhart and PFG)

162.    Mr. Botelho herein incorporates all allegations set forth above and below.

163.    Mr. Botelho engaged in protected activity under the ADEA, including, but not limited to, by opposing, expressing protected concerns, and/or engaging in other protected activity related to the discriminatory actions taken by the Company due to Mr. Botelho's age.

164.    The Company retaliated against Mr. Botelho and/or discriminated against Mr. Botelho by subjecting him to a harassing and hostile work environment, reallocating work from

younger non-handicapped employees, inappropriately and improperly disciplining Mr. Botelho, changing Mr. Botelho's workplace responsibilities and typical working hours, dismissing raised protected concerns, and/or terminating Mr. Botelho's employment for opposing an act or practice made unlawful by the ADEA.

165.    The Company willfully violated the ADEA because the Company knew or should have known its conduct was prohibited by Federal law and/or the Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Botelho.

166.    As a direct and proximate result of the Company's violations of the ADEA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

167.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

**COUNT VIII**

**(Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Mr. Botelho v. Defendants (Reinhart & PFG)**

168.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

169.    The Plaintiff engaged in protected activity under the ADA, including, but not limited to, requesting and utilizing reasonable accommodations for a disability and raising protected concerns regarding discriminatory and retaliatory treatment based on his disability disclosure..

170.    The disability-related accommodation requests which Defendants retaliated against the Plaintiff for requesting included, but were not limited to, taking one or more days off as protected leave.

171.    The Defendants unlawfully coerced, intimidated, threatened, and/or interfered with the Plaintiff's exercising of, or enjoyment of, one or more rights granted by the ADA.

172.    More specifically, the Defendants subjected Mr. Botelho to adverse employment actions, including, but not limited to, by subjecting him to a harassing and hostile work environment, reallocating work from younger non-handicapped employees, inappropriately and improperly disciplining Mr. Botelho, changing Mr. Botelho's workplace responsibilities and typical working hours, dismissing raised protected concerns, and/or terminating Mr. Botelho's employment.

173.    The Defendants acted with malice and/or with reckless indifference to the federally protected rights of the Plaintiff.

174.    As a direct and proximate result of the Defendants' violation of the ADA, The Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

175.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other

monetary damages, compensatory damages (including, but not limited to, future pecuniary

losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and

other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages,

interest, attorneys' fees, and costs.

WHEREFORE, the Plaintiff, Artur Botelho, respectfully requests that this honorable

court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendant liable on all counts;

C.  Award the Plaintiff his lost compensation and benefits (including, but not limited
    to, back pay and front pay);

D.  Award the Plaintiff other monetary damages, including for monetary losses
    resulting from his termination, as well as injury to reputation;

E.  Award the Plaintiff emotional distress damages;

F.  Award the Plaintiff compensatory damages (including, but not limited to, future
    pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss
    of enjoyment of life, and other nonpecuniary losses);

G.  Award the Plaintiff liquidated damages;

H.  Award the Plaintiff double and treble damages;

I.  Award the Plaintiff punitive damages;

J.  Award the Plaintiff his attorney's fees;

K.  Award the Plaintiff interest and costs;

L.  Award the Plaintiff all other damages to which he is entitled; and

M.  Grant such further relief as is just and equitable.

Respectfully Submitted,

Artur Botelho

By his attorneys,

THE LAW OFFICES OF WYATT & ASSOCIATES P.L.L.C

Date: September 30, 2022

By:    */s/ Chandan Panigrahi*_____

Benjamin J. Wyatt, BBO # 664182
BWyatt@Wyattlegalservices.com

Michael Varraso, BBO # 694578
MVarraso@Wyattlegalservices.com

Chandan Panigrahi, BBO #706849
Chandan@wyattlegalservices.com

The Law Offices of Wyatt & Associates, P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1112
Facsimile: (603) 685-2868